## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARY SOTOS, in her capacity as Trustee for CHRISTINA SOTOS WEBBER,  and MARY SOTOS, in her capacity as Trustee for PETER SOTOS, | CIVIL ACTION NO. |
| Plaintiffs; | |
| v. | |
| COMPUTERSHARE TRUST COMPANY, N.A.; COMPUTERSHARE INC.; COMPUTERSHARE INVESTOR SERVICES LLC; and HANESBRANDS INC.; | |
| Defendants. | MAY 29, 2015 |

## <u>COMPLAINT AND DEMAND FOR JURY TRIAL</u>

Plaintiff, MARY SOTOS, in her capacity as Trustee for Christina Sotos Webber, and Plaintiff MARY SOTOS, in her capacity as Trustee for Peter Sotos, for their Complaint against Defendants COMPUTERSHARE TRUST COMPANY, N.A., COMPUTERSHARE, INC., COMPUTERSHARE INVESTOR SERVICES   LLC (collectively,   "Computershare")   and   HANESBRANDS   INC.   ("Hanesbrands") (collectively, the "Defendants"), through their attorneys, allege as follows:

## <u>SUMMARY</u>

Several years ago, Mrs. Sotos and her husband established trusts for each of their three children.  Each of the trusts held shares of stock, which shares eventually became shares of Hanesbrands stock held in three accounts maintained by Computershare. Defendants, through communications to Mrs. Sotos, assured Mrs. Sotos that the Computershare accounts were safe and that the shares of Hanesbrands stock could remain

in those accounts as long as she wished.  Being of advanced age, Mrs. Sotos was content to keep the Hanesbrands shares in the low-maintenance Computershare accounts as a long-term investment for her children.  In 2013, after keeping these Hanesbrands shares of stock for several years in the three Computershare accounts, Mrs. Sotos received a dividend for one of the accounts and inquired of Computershare why only one of her three accounts received a dividend.  To her surprise and dismay, Mrs. Sotos learned that Defendants, without contacting her and without notice, had turned over the Hanesbrands shares in *two of the three* accounts to the State of Connecticut as *abandoned property*.  As detailed herein, Defendants' transfer of those Hanesbrands shares was done without justification and in breach of duties owed to Mrs. Sotos by Defendants, and Mrs. Sotos, through this action, seeks to recover damages caused by Defendants' wrongful conduct.

## THE PARTIES

1.      Mrs. Sotos resides at 36 Clapboard Ridge Road, Greenwich, Connecticut 06830.  At all relevant times, Mrs. Sotos was married to Hercules P. Sotos ("Mr. Sotos").  Mrs. Sotos is currently seventy-eight (78) years old, and Mr. Sotos is currently eighty-two (82) years old.  Mrs. Sotos is a citizen of the State of Connecticut.

2.      On October 9, 1989, Mr. Sotos, as grantor, and Mrs. Sotos, as trustee, entered into a written agreement that established a trust for each of their three children, Cynthia F. Sotos, Peter G. Sotos, and Christina V. Sotos (the "Agreement").  Pursuant to the Agreement, Mrs. Sotos was appointed trustee for Cynthia ("Cynthia's Trust"), Peter ("Peter's Trust"), and Christina ("Christina's Trust").  From the date of the Agreement though the date hereof, Mrs. Sotos has been the Trustee for Cynthia's Trust, the Trustee for Peter's Trust, and the Trustee for Christina's Trust.

3.      Upon information and belief, Defendant Computershare Trust Company, N.A. is a federally chartered company with a principal place of business at 250 Royall Street, Canton, MA 02021 and is the successor in interest, by merger, to Computershare Trust Company, Inc.

4.      Upon information and belief, Defendant Computershare Trust Company, N.A. has substantial and continuous contacts with the State of Connecticut, and knowingly transacts business in Connecticut, including with Mrs. Sotos.

5.      Upon information and belief, Defendant Computershare Inc. is a corporation formed under the laws of the State of Delaware with a principal place of business at 250 Royall Street, Canton, MA 02021.   Upon information and belief, Defendant Computershare Trust Company, N.A. is a wholly-owned subsidiary of Defendant Computershare Inc.

6.      Upon information and belief, Defendant Computershare Inc. has substantial and continuous contacts with the State of Connecticut, and knowingly transacts business in Connecticut, including with Mrs. Sotos.   Computershare Inc. is registered with the Connecticut Secretary of State to do business in Connecticut.

7.      Upon information and belief, Defendant Computershare Investor Services LLC ("Computershare Investor Services") is a limited liability company formed under the laws of the State of Delaware with a principal place of business at 250 Royall Street, Canton, MA 02021.

8.      Upon information and belief, none of the members of Computershare Investor Services is domiciled in the State of Connecticut.

9.      Upon information and belief, Defendant Computershare Investor Services has substantial and continuous contacts with the State of Connecticut, and knowingly transacts business in Connecticut, including with Mrs. Sotos.

10.     Upon information and belief, Defendants Computershare Trust Company, N.A., Computershare Inc., and Computershare Investor Services LLC acted as affiliates and in concert for each other's mutual benefit with respect to the matters stated herein and are referred to, collectively, as "Computershare."

11.     Upon information and belief, Defendant Hanesbrands, Inc. ("Hanesbrands") is a Maryland corporation with a principal place of business in North Carolina.

12.      Upon information and belief, Defendant Hanesbrands has substantial and continuous contacts with the State of Connecticut, and knowingly transacts business in Connecticut, including with Mrs. Sotos.  Hanesbrands is registered with the Connecticut Secretary of State to do business in Connecticut.

13.     Computershare was acting as the agent for Hanesbrands, which was the principal, with respect to the matters alleged herein.

14.     Defendants' conduct caused Mrs. Sotos, a Connecticut resident, to sustain substantial damages within the State of Connecticut.

### JURISDICTION AND VENUE

15.     This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because each of the Defendants to this action is a citizen of a different state than Mrs. Sotos and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

16.     The United States District Court for the District of Connecticut is the proper venue for this matter pursuant to 28 U.S.C. § 1391(a) because Mrs. Sotos resides in this judicial district, a substantial part of the events and omissions giving rise to this action occurred within this judicial district, and the property that is the subject of the action was wrongfully taken from Plaintiffs in this judicial district and escheated to the State of Connecticut within this judicial district.

## FACTUAL ALLEGATIONS

### The Trusts Receive Shares Of Hanesbrands Stock In 2006

17.     Relevant here, prior to August 2006, Mrs. Sotos acquired shares of Sara Lee Corporation ("Sara Lee") in her capacity as Trustee for each of Cynthia's Trust, Peter's Trust, and Christina's Trust.

18.     Relevant here, on or about August 11, 2006 and September 14, 2006, Hanesbrands sent letters via mail to Mrs. Sotos, as Trustee for Christina's Trust.  The September 14, 2006 letter ("Hanesbrands Letter") describes the distribution of Hanesbrands stock to Mrs. Sotos resulting from the spin-off of Hanesbrands from Sara Lee as of August 18, 2006.

19.     The Hanesbrands Letter was addressed to Mrs. Sotos at 36 Clapboard Ridge Road, Greenwich, CT 06830.

20.     Mrs. Sotos received, read and relied on the Hanesbrands Letter.

21.     The Hanesbrands Letter states that the Hanesbrands shares distributed to Mrs. Sotos would be held in book entry form in the Direct Registration System (DRS) by Computershare.

22.     The Hanesbrands Letter enclosed the Direct Registration (DRS) Advice statement, dated September 6, 2006, issued by Computershare indicating that Mrs. Sotos, as Trustee for Christina's Trust, received 8,521 shares of Hanesbrands stock upon completion of the spin-off and that such Hanesbrands shares were held in an account owned by Mrs. Sotos, as Trustee for Christina's Trust, maintained by Computershare ("September 2006 Computershare Statement").

23.     Mrs. Sotos received similar correspondence from Defendants concerning Peter's Trust.

24.     Upon receipt of the Hanesbrands shares owned by Mrs. Sotos, Defendants set up three accounts for Mrs. Sotos as Trustee for Christina's Trust, Cynthia's Trust and Peter's Trust.  Upon the creation of these three accounts, Mrs. Sotos, as trustee, and Defendants entered into an agreement whereby the Hanesbrands shares owned by Mrs. Sotos as trustee would be maintained by Defendants, with Defendants receiving the benefits of using DRS as opposed to stock certificates.

25.     Mrs. Sotos did not direct or control the delivery of the Hanesbrands shares issued to her as a result of the spin-off or the creation of the three accounts for the trusts. Defendants had superior knowledge and total control over such matters and thereby assumed an ongoing duty to Mrs. Sotos to properly maintain such accounts containing shares of Hanesbrands stock owned by her.

26.     Neither the Hanesbrands Letter nor the September 2006 Computershare Statement informed Mrs. Sotos that account activity and/or affirmative contact with Computershare was required in order to prevent the possibility of escheatment of Mrs. Sotos' Hanesbrands shares.

27. To the contrary, the September 2006 Computershare Statement misleadingly states: "This advice is your record of the share transaction affecting your account on the books of the Company. . . . It should be kept with your important documents as a record of your ownership of these shares. ***No action on your part is required, unless you wish to deposit your existing certificates, sell or request a certificate, or transfer your book-entry shares***." (emphasis added).

28. By informing Mrs. Sotos that "no action on [her] part was required" in connection with her ownership of Hanesbrands shares, Defendants mislead and deceived Mrs. Sotos.

29. The September 2006 Computershare Statement is silent with respect to the possibility of escheatment of Mrs. Sotos's Hanesbrands shares.

30. The Hanesbrands Letter also enclosed "Questions and Answers regarding the Hanesbrands Spin-off" ("Hanesbrands Q&A") and the "Terms and Conditions of Sale Facility" ("Hanesbrands T&C").

31. The Hanesbrands Q&A informed Mrs. Sotos that Hanesbrands is utilizing the Direct Registration System (DRS) which it touts as "creat[ing] a much safer 'certificateless' environment for stockholders."

32. The Hanesbrands Q&A stated that Computershare is the transfer agent for Mrs. Sotos' Hanesbrands shares.

33. The Hanesbrands Q&A informed Mrs. Sotos that Hanesbrands would not issue paper stock certificates for Hanesbrands shares, even if requested.

34.     The Hanesbrands Q&A stated that Mrs. Sotos had been assigned an account number and will continue to receive statements that detail account activity and share balance.

35.     The Hanesbrands Q&A stated that with the use of the DRS, a shareholder, like Mrs. Sotos, would retain full ownership of the shares, and would have all the traditional rights and privileges as holders of shares held in certificate form.

36.     The Hanesbrands Letter and Hanesbrands Q&A did not inform Mrs. Sotos that account activity and/or affirmative contact with Computershare was required in order to prevent the possibility of escheatment of the Escheated Shares.

37.     In the Hanesbrands Q&A, in connection with the question "Is book entry safe?", the risk of escheatment, or the need for any account activity or contact within any prescribed period to avoid escheatment, is not discussed.

38.     To the contrary, the Hanesbrands Q&A misleadingly states: "***You do not need to do anything to retain your ownership of either Hanesbrands or Sara Lee shares***."  (emphasis added).

39.     Once again, by informing Mrs. Sotos that "***You do not need to do anything to retain your ownership of either Hanesbrands or Sara Lee shares***," Defendants mislead and deceived Mrs. Sotos.

40.     The Hanesbrands Letter and the Hanesbrands Q&A did not inform Mrs. Sotos of any risk of escheatment of the Hanesbrands shares.

41.     Likewise, the Hanesbrands T&C did not inform Mrs. Sotos that account activity and/or affirmative contact with Computershare was required in order to prevent

the possibility of escheatment of Mrs. Sotos' Hanesbrands shares and did not inform Mrs. Sotos of any risk of escheatment of the Hanesbrands shares.

42.     In addition, Computershare issued a brochure to shareholders like Mrs. Sotos that outlines the DRS and the role and duties of Computershare ("DRS Brochure").

43.     The DRS Brochure explains that DRS is share ownership without paper stock certificates, whereby the shares are held in book-entry form and Computershare, as Hanesbrands' transfer agent, keeps a record of a shareholder's shares on Hanesbrands' register of owners.

44.     The DRS Brochure did not inform Mrs. Sotos that account activity and/or affirmative contact with Computershare was required in order to prevent against the possibility of escheatment of the Hanesbrands shares.

45.     To the contrary, the DRS Brochure states in describing the alleged benefits of DRS – as the very first bullet point – that DRS "*Eliminates your risk of loss*, theft or destruction of certificates…."

46.     Again, to the contrary, the DRS Brochure further states that every time there is a transaction involving the shareholder's shares, Computershare will send the shareholder  a statement (entitled "A Direct Registration Transaction Advice")  detailing the activity.

47.     The statements contained within the Hanesbrands Letter, the Hanesbrands Q&A, the Hanesbrands T&C and the DRS Brochure were provisions of the agreement between Mrs. Sotos as trustee and Defendants governing the maintenance of the accounts holding the Escheated Shares.

48.     Based on the representations stated within the Hanesbrands Letter, the Hanesbrands Q&A, the Hanesbrands T&C and the DRS Brochure, Mrs. Sotos was led to believe that the Escheated Shares were safe and secure, as if they were held in certificated form in a safe deposit box.

49.     The Hanesbrands Letter, the Hanesbrands Q&A, the Hanesbrands T&C and the DRS Brochure are affirmatively misleading and deceptive and provided Mrs. Sotos with misinformation as to whether or not her Hanesbrands shares could be subject of escheatment.

50.     Mrs. Sotos relied on and was misled by the Hanesbrands Letter, the Hanesbrands Q&A, the Hanesbrands T&C and the DRS Brochure in her role as trustee for Christina's and Peter's Trusts.

51.     Defendants designed and structured the issuance and maintenance in book entry of Mrs. Sotos' Hanesbrands shares and had superior knowledge concerning such matters.

52.     In or about 2014, Computershare revised its Direct Registration (DRS) Advice Statement (*i.e.* the account statement sent to shareholders like Mrs. Sotos) for Mrs. Sotos' accounts for Cynthia, Peter's and Christina's Trusts to remove the misleading language and add in ***new language, in bold-faced type,*** stating the following disclaimer: "**If you do not keep in contact with us or have any activity in your account for the time periods specified by state law, your property could become subject to state unclaimed property laws and transferred to the appropriate state.**" (emphasis in original).

10

**Defendants' Dealings With Mrs. Sotos Prior To Escheatment**

53.     At all relevant times, Defendants had a written record of Mrs. Sotos' address in Greenwich, Connecticut.  That address, 36 Clapboard Ridge Road, Greenwich, Connecticut 06830, has been Mrs. Sotos's address since before the date the Hanesbrands shares were issued through the present, without interruption.

54.     At all relevant times, Mrs. Sotos acted as trustee for Christina's Trust, Cynthia's Trust and Peter's Trust.

55.     Following the Hanesbrands stock spin-off, Mrs. Sotos, as Trustee, held the identical number of Hanesbrands shares (8,521) for each Christina's Trust and Cynthia's Trust.  In addition, just prior to escheatment, Mrs. Sotos held 375 shares for Peter's Trust.

56.     Mrs. Sotos held these shares in identical accounts with Computershare.

57.     Under Connecticut law, Mrs. Sotos is the record owner of the shares she held for Cynthia's Trust, Christina's Trust and Peter's Trust.

58.     Mrs. Sotos had the same contact information on file with Hanesbrands and Computershare for each of these Trusts.

59.     Upon information and belief, Hanesbrands, through its transfer agent Computershare, maintains pursuant to Md. Corporations and Association Code § 2-209 its "stock ledger" which is required to list the name and address of each stockholder.

60.     In early April 2010, Mrs. Sotos received by mail a "Due Diligence" form from Hanesbrands and Computershare regarding the account Mrs. Sotos held for Cynthia's Trust ("Cynthia Due Diligence Form").  The Cynthia Due Diligence Form is dated April 1, 2010.

61.     According to Computershare, on April 7, 2010, Mr. Sotos called and spoke with Computershare.

62.     That same day, on April 7, 2010, Mrs. Sotos signed and returned the Cynthia Due Diligence Form.   In so doing, Mrs. Sotos confirmed that her principal residence remained at the same Greenwich, Connecticut address.

63.     By letter dated July 8, 2014 to Mrs. Sotos' counsel, Computershare admitted that the Cynthia Due Diligence Form was completed, signed and returned to Computershare ("Computershare July 2014 Letter").   In the Computershare July 2014 Letter, Computershare provided Mrs. Sotos' counsel with a copy of the Cynthia Due Diligence Form.

64.     Mrs. Sotos did not retain a copy of the signed Cynthia Due Diligence Form after she returned it to Computershare.

65.     Mrs. Sotos, to her knowledge, did not receive a due diligence form for Christina's Trust in 2010.

66.     Mrs. Sotos, to her knowledge, did not receive a due diligence form for Peter's Trust in 2010.

67.     Mr. Sotos contacted Computershare in 2010 by telephone on one or more occasions in the 2010 timeframe.

68.     When he did so, Mr. Sotos was acting at the behest of Mrs. Sotos.

69.     In the Computershare July 2014 Letter, Computershare admits that Mr. Sotos contacted Computershare by telephone on or around the time Mrs. Sotos received the Cynthia Due Diligence Form, and requested assistance.

70.    By letter dated August 21, 2014 to Mrs. Sotos' counsel, Computershare admitted that Mr. Sotos made ***more than one telephone call*** to Computershare, stating that Mr. Sotos made "subsequent phone ***calls*** … seeking assistance." (emphasis added).

71.    Computershare has refused Mrs. Sotos' counsel's request to produce a copy of Computershare's records of such telephone calls.

**Defendants' Lack Of Due Diligence Prior To Escheatment**

72.    Upon information and belief, Defendants delivered the Hanesbrands shares from two accounts held by Mrs. Sotos as Trustee for Christina Sotos Webber (8,521 shares) and as Trustee for Peter Sotos (375 shares) (the "Escheated Shares") to the State of Connecticut as abandoned property on or about August of 2011.

73.    From April 2010 until Computershare escheated the Escheated Shares, Defendants did not send any follow up correspondence to or try to contact (such as by a telephone call) Mrs. Sotos concerning the possible escheatment of the shares she held in accounts as Trustee of Christina's Trust or Peter's Trust, before such shares were escheated by Defendants.

74.    Defendants did not send any follow up correspondence to or try to contact (such as by a telephone call) Mrs. Sotos concerning the Escheated Shares after such shares were escheated by Defendants, and before such shares were sold by the State of Connecticut.

75.    Computershare had an express obligation to send Mrs. Sotos a statement detailing the activity every time there was a transaction involving the shareholder's shares.

76.     More specifically, in the DRS Brochure, Computershare undertook the obligation to Mrs. Sotos to send a Direct Registration Transaction Advice statement every time there was account activity.

77.     Computershare did not send Mrs. Sotos notice that the Escheated Shares had been escheated to the State of Connecticut until years later, after the State of Connecticut has sold the shares.

78.     Mrs. Sotos had no knowledge that the Escheated Shares had been escheated to the State of Connecticut.

79.     Had Computershare sent such notice to Mrs. Sotos, upon information and belief, Mrs. Sotos could have recovered the Escheated Shares from the State of Connecticut prior to the sale of such shares.

80.     Computershare states on its website: "State law requires all companies to perform due diligence searches to locate holders at risk of escheatment before declaring their property to be abandoned."

81.     Upon information and belief, Computershare did not perform a due diligence search for Mrs. Sotos before declaring the Escheated Shares to be abandoned.

82.     Upon information and belief, there was activity on Mrs. Sotos's accounts from 2006 to 2010 for Christina's Trust and Peter's Trust.

83.     The Sotos' were prompt and diligent in their dealings with Defendants. For example, upon receipt of the Cynthia Due Diligence Form, they promptly contacted Computershare and signed and returned the form within a matter of days.

84.     As such, had Computershare done *any* due diligence, such as a simple phone call to Mrs. Sotos, before transferring the Escheated Shares, the wrongful escheatment could have been avoided.

**Defendants' Lack Of Justification To Escheat the Escheated Shares**

85.     By letter dated June 18, 2014 from Computershare to Mrs. Sotos' counsel concerning the Escheated Shares, Computershare stated affirmatively when escheatment of shares is required under state law, namely if any of the following occurs: (a) the mailing address is classified as "undeliverable" (the result of two or more mailings being returned to Computershare by the US Postal Service); (b) shares subject to a mandatory exchange due to corporate reorganization that remain outstanding for a period of time exceeding the state dormancy period; or (c) the account maintains unclaimed checks that were issued prior to the beginning of the state dormancy period.  None of the conditions in the foregoing paragraph had occurred when Computershare transferred the Escheated Shares.

86.     In the Computershare July 2014 Letter, Computershare stated that Computershare transferred the Escheated Shares because:

> The records of the accounts in issue indicate that the notice applicable to [Cynthia's Trust's Account] was completed, signed and returned to Computershare (copy attached).  In fact, Hercules Soto [sic] contacted Computershare by telephone at or about the time of receipt of the notice to indicate he was completing the notice on [Cynthia's Trust's Account] and needed assistance.  On the other hand, the records of Computershare indicate that the notice applicable to [Christina's Trust's Account] (copy attached) was not completed, signed and returned to Computershare with the result that the escheat of the Hanesbrands, Inc. shares in that account occurred in accordance with the aforementioned statutory provisions.

87.     Computershare knew or should have known that Mrs. Sotos had not abandoned the Escheated Shares for multiple reasons, including Computershare's own admissions concerning the Sotos' phone calls in 2010, Mrs. Sotos' return of Cynthia's Due Diligence Form (with the exact same contact information for Mrs. Sotos), Mrs. Sotos' continuous residence at the same address that they had on file, and other account activity.

88.     In transferring the Escheated Shares, Computershare ignored Mrs. Sotos' account activity for Cynthia's Trust.

89.     Defendants breached their duties to Mrs. Sotos – a simple phone call to her would have prevented the transfer of the Escheated Shares and losses of more than $1 million.

90.     Computershare's delivery of the Escheated Shares was not made in a reasonable attempt to comply with the escheat laws of the State of Connecticut because Computershare failed to provide any notice whatsoever to Mrs. Sotos that the Escheated Shares could be escheated in the absence of account activity and/or affirmative contact and in fact deceived her into believing that the Escheated Shares would be safe, failed to conduct any due diligence and in fact ignored telephonic and written contact on behalf of Mrs. Sotos concerning Hanesbrands shares, and failed to provide notice to Mrs. Sotos of the escheatment of the Escheated Shares.

91.     Computershare also lacked a reasonable basis to believe that, based upon the facts known to it, the Escheated Shares were abandoned because Computershare failed to conduct any due diligence concerning the status of such shares, did not receive any indication that Mrs. Sotos was no longer living at the address Computershare had in

16

its records, and delivered the Escheated Shares to the State of Connecticut despite telephonic and written contact on behalf of Mrs. Sotos concerning Hanesbrands shares.

92.     Computershare's records concerning the Escheated Shares did not meet the reasonable standard of practice in the industry because Computershare failed to conduct any due diligence concerning the ownership of the Escheated Shares and failed to make a proper record of telephonic and written contact with Mrs. Sotos.

93.     As such, Computershare's delivery of the Escheated Shares to the State of Connecticut was made in bad faith.

**Mrs. Sotos First Learns of Defendants' Wrongful Escheatment**

94.     In 2013, Mrs. Sotos, as Trustee for Cynthia's Trust, received a statement from Computershare reflecting the payment of a dividend for that account.

95.     When she received the statement for Cynthia's Trust, Mrs. Sotos questioned why she had not received an identical account statement reflecting the same dividend for Christina's Trust or Peter's Trust.

96.     In the fall of 2013, Mrs. Sotos learned that no dividend had been paid to Christina's Trust or Peter's Trust because Defendants had, years before, delivered the Escheated Shares to the State of Connecticut as abandoned property.  Prior to the fall of 2013, Mrs. Sotos had no knowledge that the Escheated Shares had been escheated to the State of Connecticut.

97.     Without notice from Defendants, and in the absence of any indication that Mrs. Sotos needed to affirmatively contact Computershare with respect to the Escheated Shares, Mrs. Sotos would have had absolutely no way to discover that the Escheated Shares had been delivered to the State of Connecticut as abandoned property.

98.     Had Computershare sent such notice to Mrs. Sotos, upon information and belief, Mrs. Sotos could have recovered the Escheated Shares from the State of Connecticut prior to the sale of such shares.

99.     As part of their ongoing obligation to properly maintain Mrs. Sotos's accounts, which obligation arose immediately after the spin-off of Hanesbrands from Sara Lee, Defendants had a duty to notify Mrs. Sotos of the delivery of the Escheated Shares to the State of Connecticut as abandoned property.

100.    In addition, Defendants failure to notify Mrs. Sotos of the delivery of the Escheated Shares to the State of Connecticut as abandoned property was part of a continuing course of conduct and in further dereliction of Defendants' duty to properly maintain the accounts in which the Escheated Shares were held.

**Mrs. Sotos Files Claims with the State of Connecticut to Recover the Sales Proceeds of the Escheated Shares**

101.    After learning that the Escheated Shares had been turned over to the State of Connecticut, Mrs. Sotos filed a claim with the State of Connecticut for the return of the Escheated Shares.

102.    According to the State of Connecticut, by letter dated September 3, 2014 to Mrs. Sotos' counsel, when Defendants transferred the Escheated Shares, Defendants incorrectly reported the shares as issued (*i.e.* certificated), not book entry shares.

103.    Accordingly, Defendants misunderstood the manner in which they held the Escheated Shares and relayed that misinformation to the State of Connecticut.

104.    The State of Connecticut has informed Mrs. Sotos that it sold those Escheated Shares held in an account owned by Mrs. Sotos as Trustee for Christina's Trust for the sum of $238,772.05.

105. In 2014, the State of Connecticut returned the sum of $238,772.05 to Mrs. Sotos for those Escheated Shares held in an account owned by Mrs. Sotos as Trustee for Christina's Trust.

106. As such, Mrs. Sotos' damages against Defendants may be reduced by the sum of $238,772.05.

107. The State of Connecticut has informed Mrs. Sotos that it sold those Escheated Shares held in an account owned by Mrs. Sotos as Trustee for Peter's Trust for the sum of $10,508.10.

108. To date, the State of Connecticut has not returned to Mrs. Sotos the sum of $10,508 for those Escheated Shares held in an account owned by Mrs. Sotos as Trustee for Peter's Trust.

**Mrs. Sotos's Damages and Hanesbrands Stock Price History**

109. The price of the Escheated Shares at the time they were sold by the State of Connecticut was approximately $28/share, for a net sales price for those Escheated Shares held in an account owned by Mrs. Sotos as Trustee for Christina's Trust of $238,772.05 and for those Escheated Shares held in an account owned by Mrs. Sotos as Trustee for Peter's Trust of $10,508.10.

110. Notably, the price of Hanesbrands stock has increased since the sale of the Escheated Shares.  As of March 3, 2015, Hanesbrands shares of stock were trading at $127.95 per share.

111. As of March 4, 2015, Hanesbrands shares were the subject of a 4 for 1 stock split, thus reducing the price of each share and increasing the number of issued

shares.  Since Computershare had wrongfully escheated the Escheated Shares, Mrs. Sotos did not receive the benefits of that 4 for 1 stock split.

112.    As of the close of the market on May 28, 2015, shares of Hanesbrands stock were trading at $31.93 per share.  As of the date hereof, the 8,521 Hanesbrands shares owned by Mrs. Sotos as Trustee for Christina's Trust would have been increased to 34,084 shares worth over $1 million.

**Mrs. Sotos Provides Statutory Notices to Computershare before Filing Suit**

113.    On or about December 9, 2014, Mrs. Sotos, through legal counsel, provided written notice to Computershare of the unfair and/or deceptive acts and/or practices alleged herein in violation of Massachusetts General Laws, Chapter 93A, Section 9, the Consumer Protection Act, and the provisions of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110a to 42-110q.

114.    On or about January 9, 2015, Computershare provided Mrs. Sotos' counsel with a response on behalf of Computershare.

## COUNT I: NEGLIGENCE
### (Against All Defendants)

115.    Plaintiffs incorporate by reference all the foregoing paragraphs above as though fully set forth herein.

116.    As a result of their issuance of the Escheated Shares following the Sara Lee stock split, and their placement of the Escheated Shares in accounts owned by Plaintiffs, Defendants owed duties to Plaintiffs to maintain such accounts for the benefit of Plaintiffs, to account properly for the status of the Escheated Shares, to exercise due care and diligence in exercising control over the disposition of the Escheated Shares, to disclose all information concerning Defendants' written statements to Plaintiffs necessary

to avoid misleading Plaintiffs, to avoid improper transfers of the Escheated Shares to the detriment of Plaintiffs, and to manage and handle the Escheated Shares in a manner that complied fully with federal and state law.

117.    Defendants breached their duties to Plaintiffs by wrongfully delivering the Escheated Shares to the State of Connecticut as abandoned property.

118.    Defendants also breached their duties to Plaintiffs by failing to conduct due diligence and/or maintain proper records to determine, among other things, (a) whether the Escheated Shares were actually abandoned, (b) the date of Mrs. Sotos's last contact with Computershare, and (c) whether Defendants had an obligation to deliver the Escheated Shares to the State of Connecticut as abandoned property.

119.    Defendants also breached their duties to Plaintiffs by failing to contact Mrs. Sotos with respect to the Escheated Shares, even though Defendants knew how to contact Mrs. Sotos, and by failing to notify Mrs. Sotos of their intent to escheat the Escheated Shares in the purported absence of such contact or other action.

120.    Defendants also breached their duties to Plaintiffs by (a) failing to notify Plaintiffs that they intended to deliver the Escheated Shares to the State of Connecticut as abandoned property, and (b) failing to notify Plaintiffs that the Escheated Shares had in fact been delivered to the State of Connecticut as abandoned property.

121.    Defendants also breached their duties to Plaintiffs by failing to disclose to Plaintiffs in any document that (a) account activity and/or affirmative contact was required in order to prevent the possibility of escheatment of the Escheated Shares, (b) ownership of the Escheated Shares was subject to the abandoned property laws of the State of Connecticut, or (c) Defendants deemed the Escheated Shares abandoned unless

Plaintiffs took action on the subject accounts or contacted Defendants with respect to such accounts.

122.    Defendants' acts and omissions actually and proximately caused Plaintiffs to suffer substantial losses.

123.    The foregoing acts and omissions were part of a continuing course of conduct in dereliction of duties owed to Mrs. Sotos.

## COUNT II: CONVERSION
### (Against All Defendants)

124.    Plaintiffs incorporate by reference all the foregoing paragraphs above as though fully set forth herein.

125.    Plaintiffs were the owners of the Escheated Shares held in book entry form in accounts maintained by Defendants and therefore had a right to immediate possession of such shares.

126.    Defendants, in intentional disregard of Plaintiffs' superior right to immediate possession of the Escheated Shares, delivered the Escheated Shares to the State of Connecticut as abandoned property.

127.    Despite having no lawful claim to the Escheated Shares, which were the property of Plaintiffs, Defendants misappropriated such property and deprived Plaintiffs of the use of such property.

128.    Defendants have wrongfully deprived Plaintiffs of the ownership and use of the Escheated Shares.

129.    As a result of Defendants' wrongful deprivation of the Escheated Shares, Plaintiffs have suffered damage, and continue to suffer damage.

## COUNT III: BREACH OF CONTRACT
### (Against All Defendants)

130. Plaintiffs incorporate by reference all the foregoing paragraphs above as though fully set forth herein.

131. On information and belief, Hanesbrands, as principal, contracted with Computershare, as agent, to act as a transfer agent for Hanesbrands shares of stock.

132. Hanesbrands and Computershare Trust Company, N.A. entered into a Rights Agreement, dated September 1, 2006 (the "Rights Agreement").

133. The Rights Agreement governed the services that Computershare Trust Company, N.A would provide to Hanesbrands and its shareholders in connection with certain rights attendant to the ownership of Hanesbrands shares of stock (the "Rights").

134. Pursuant to the Rights Agreement, Computershare Trust Company, N.A acted as the agent of Hanesbrands Inc.

135. Upon information and belief, Computershare Trust Company, N.A performed these services directly, or delegated these duties to one of the Defendants, as agent.

136. Pursuant to the Rights Agreement, Mrs. Sotos is a holder of Rights as described therein.

137. Pursuant to Section 15 of the Rights Agreement, Mrs. Sotos is vested with any and all rights of action under the Rights Agreement.

138. Pursuant to Section 15 of the Rights Agreement, Mrs. Sotos is an express third party beneficiary of the Rights Agreement.

139. Upon information and belief, Hanesbrands and either or both Computershare Trust Company, N.A and Computershare Investor Services, LLC entered

into a related agreement governing the provision of transfer agent services to Hanesbrands ("Transfer Agent Agreement" and, collectively with the Rights Agreement, the "Hanesbrands-Computershare Agreement").

140.    Upon information and belief, pursuant to the Hanesbrands-Computershare Agreement, Computershare had a contractual obligation to determine, among other things, whether shares issued by Hanesbrands were abandoned or otherwise qualified as unclaimed property.

141.    On information and belief, pursuant to the Hanesbrands-Computershare Agreement, Hanesbrands delegated to Computershare certain authority, including the authority to determine whether the Hanesbrands shares owned by Plaintiffs qualified as unclaimed property under applicable law.

142.    Upon information and belief, pursuant to the Hanesbrands-Computershare Agreement, Defendants had a duty to Mrs. Sotos to maintain accounts for her benefit, to account properly for the status of the Escheated Shares, to exercise due care and diligence in exercising control over the disposition of the Escheated Shares, to disclose all information concerning Defendants' written statements to Mrs. Sotos necessary to avoid misleading her, to avoid improper transfers of the Escheated Shares to the detriment of Mrs. Sotos, and to manage and handle the Escheated Shares in a manner that complied fully with federal and state law.

143.    On information and belief, Computershare accepted said delegation and, in so doing, assumed the duties attendant thereto.

144.    The shareholders of Hanesbrands, including Plaintiffs, were and are the intended beneficiaries of the Hanesbrands-Computershare Agreement and, accordingly,

were and are third-party beneficiaries of the Hanesbrands-Computershare Agreement between Hanesbrands and Computershare, including any indemnity provisions set forth therein.

145.    Upon the creation of these three accounts, Mrs. Sotos, as trustee, and Defendants entered into an agreement whereby the Hanesbrands shares owned by Mrs. Sotos as trustee would be maintained by Defendants, with Defendants receiving the benefits of using DRS as opposed to stock certificates (the "Account Agreement").

146.    The statements contained within the Hanesbrands Letter, the Hanesbrands Q&A, the Hanesbrands T&C and the DRS Brochure were provisions of the Account Agreement.

147.    By Computershare's acts and omissions set forth herein, including but not limited to its wrongful delivery of the Escheated Shares to the State of Connecticut as abandoned property and its failure to provide notice of such escheatment to Plaintiffs, and for other reasons set forth herein, Defendants breached their duties to Plaintiffs under the Hanesbrands-Computershare Agreement and/or the Account Agreement.

148.    As the actual and proximate cause of Defendants' breach of the Hanesbrands-Computershare Agreement and/or the Account Agreement, Plaintiffs have been damaged.

## COUNT IV: BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
### (Against All Defendants)

149.    Plaintiffs incorporate by reference all the foregoing paragraphs above as though fully set forth herein.

150.    The shareholders of Hanesbrands, including Plaintiffs, were and are the intended beneficiaries of the Hanesbrands-Computershare Agreement and, accordingly, were and are third-party beneficiaries of the Hanesbrands-Computershare Agreement between Hanesbrands and Computershare, including any indemnity provisions set forth therein.

151.    Defendants, by virtue of the Account Agreement and/or the Hanesbrands-Computershare Agreement, of which Plaintiffs are third-party beneficiaries, had a duty to deal with Plaintiffs in good faith and to not take any actions to prevent or hinder Plaintiffs from receiving the benefits due to them under the Account Agreement and/or the Hanesbrands-Computershare Agreement.

152.    Defendants, by Computershare's acts and omissions set forth herein, including but not limited to its wrongful delivery of the Escheated Shares to the State of Connecticut as abandoned property and its failure to provide notice of such escheatment to Plaintiffs, and for other reasons set forth herein, acted in bad faith and breached their duties to Plaintiffs under the Account Agreement and/or the Hanesbrands-Computershare Agreement.

153.    In acting as aforesaid, Defendants acted with the intent to injure Plaintiffs' rights under the Account Agreement and/or the Hanesbrands-Computershare Agreement and with a dishonest purpose.

154.    The above actions taken in bad faith by Defendants have caused damage to Plaintiffs.

**COUNT V: VIOLATION OF THE**
**CONNECTICUT UNFAIR TRADE PRACTICES ACT ("CUTPA")**
**(Against Computershare)**

155.    Plaintiffs incorporate by reference all the foregoing paragraphs above as though fully set forth herein.

156.    Computershare is in the trade or business of providing transfer agent services to corporations and their shareholders, including shareholders, such as Plaintiffs, who are located within the State of Connecticut.

157.    Computershare, within its own trade or commerce, has taken the aforesaid actions that are deceptive or unfair in that such unfair actions offend public policy, are immoral, unethical, oppressive, or unscrupulous, and have caused substantial injury to Plaintiffs.

158.    Computershare's delivery of the Escheated Shares to the State of Connecticut violated the public policy expressed in the escheat laws of the State of Connecticut and was not made in a reasonable attempt to comply with such laws because Computershare failed to provide any notice whatsoever to Mrs. Sotos that the Escheated Shares could be escheated in the absence of account activity and/or affirmative contact and in fact deceived her into believing that the Escheated Shares would be safe, failed to conduct any due diligence and in fact ignored telephonic and written contact on behalf of Mrs. Sotos concerning Hanesbrands shares, and failed to provide notice to Mrs. Sotos of the escheatment of the Escheated Shares.

159.    Computershare's delivery of the Escheated Shares to the State of Connecticut violated the public policy expressed in the escheat laws of the State of Connecticut because Computershare also lacked a reasonable basis to believe that, based

upon the facts known to it, the Escheated Shares were abandoned.  Computershare failed to conduct any due diligence concerning the status of such shares, did not receive any indication that Mrs. Sotos was no longer living at the address Computershare had in its records, and delivered the Escheated Shares to the State of Connecticut despite telephonic and written contact on behalf of Mrs. Sotos concerning Hanesbrands shares.

160.   Computershare's delivery of the Escheated Shares to the State of Connecticut violated the public policy expressed in the escheat laws of the State of Connecticut because Computershare's records concerning the Escheated Shares did not meet the reasonable standard of practice in the industry in that it failed to conduct any due diligence concerning the ownership of the Escheated Shares and failed to make a proper record of telephonic and written contact with Mrs. Sotos.

161.   Computershare's conduct described herein unnecessarily or recklessly imposes substantial hardship and loss on Plaintiffs and/or was undertaken with complete disregard or indifference to the rights and interests of Plaintiffs who are certain to be affected by that conduct.

162.   As a result of Computershare's conduct as described herein, Plaintiffs suffered a loss, which loss was substantial, not outweighed by countervailing benefits to consumers or competition, and one that Plaintiffs could not reasonably have avoided.

163.   By stating to Plaintiffs (a) that "This advice is your record of the share transaction affecting your account on the books of the Company. . . .  It should be kept with your important documents as a record of your ownership of these shares. *No action on your part is required, unless you wish to deposit your existing certificates, sell or request a certificate, or transfer your book-entry shares*," (b) that DRS was safe and

"***Eliminates your risk of loss***, theft or destruction of certificates," and (c) that "***You do not need to do anything to retain your ownership of either Hanesbrands or Sara Lee shares***," Computershare made misrepresentations to Plaintiffs, which representations mislead and deceived Plaintiffs.

164.   By failing to advise consumers such as Plaintiffs that account activity and/or affirmative contact with Computershare was required in order to prevent the possibility of escheatment of shares of Hanesbrands stock, Computershare omitted material information.

165.   Plaintiffs reasonably interpreted such misrepresentations and omissions to mean that the Escheated Shares were safe and that no action was required of Plaintiffs to prevent the Escheated Shares from being deemed abandoned.

166.   Such misrepresentations and omissions were material in that they likely affected the conduct of consumers, such as Plaintiffs.

167.   As a result of the conduct described herein, Plaintiffs have suffered a deprivation, detriment, and/or injury in the loss of the Escheated Shares.

168.   Such conduct is an unfair act or practice and/or a deceptive act or practice in Computershare's trade or business under the Connecticut Unfair Trade Practices Act.

169.   Computershare acted as aforesaid in reckless indifference to, and/or wanton disregard of, the rights of Plaintiffs.

### COUNT VI: VIOLATION OF CHAPTER 93A
### OF THE MASSACHUSETTS GENERAL LAWS
### (Against Computershare)

170.   Plaintiffs incorporate by reference all the foregoing paragraphs above as though fully set forth herein.

171.    Computershare is in the trade or business of providing transfer agent services to corporations and their shareholders, including shareholders, such as Plaintiffs, from its offices located in the Commonwealth of Massachusetts.

172.    By its acts and omissions set forth in detail above, Computershare willfully and knowingly engaged in unfair and/or deceptive acts and/or practices in violation of Section 2 of Chapter 93A of the Massachusetts General Laws.

173.    Computershare's acts and omissions set forth above were done willfully and knowingly.

174.    These actions occurred substantially in and from Massachusetts, where Computershare is located.

175.    Computershare's acts and omissions actually and proximately caused Plaintiffs to suffer substantial losses.

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

A.      An award of monetary damages.

B.      An award of interest and costs.

C.      An award of punitive damages.

D.      An award of punitive damages under Conn. Gen. Stat. § 42-110g(a);

E.      An award of costs and attorneys' fees under Conn. Gen. Stat. § 42-110g(d);

F.      An award of and multiple damages, and attorneys' fees and costs under Mass. Gen. L. ch 93A § 9; and

G.      Awarding such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all issues so triable.

PLAINTIFFS MARY SOTOS, in her capacity as Trustee for CHRISTINA SOTOS WEBBER, and MARY SOTOS, in her capacity as Trustee for PETER SOTOS,

By: _/s/Sean M. Fisher_

Sean M. Fisher (ct23087)
BRENNER, SALTZMAN & WALLMAN LLP
271 Whitney Avenue
New Haven, CT 06511
Tel.: (203) 772-2600
Fax: (203) 562-2098
Email: sfisher@bswlaw.com