**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **MARY SOTOS, in her capacity** | : | **15cv818 (WWE)** |
| **as Trustee for CHRISTINA SOTOS** | : | |
| **WEBBER, and in her capacity as** | : | |
| **Trustee for PETER SOTOS,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **COMPUTERSHARE TRUST** | : | |
| **COMPANY, N.A., COMPUTERSHARE** | : | |
| **INC., COMPUTERSHARE INVESTOR** | : | |
| **SERVICES, LLC, and HANESBRANDS** | : | |
| **INC.,** | : | |
| **Defendants** | : | |

**RULING ON DEFENDANTS' MOTION TO DISMISS**

In this action, plaintiff Mary Sotos, as Trustee for Christina Sotos Webber and

Peter Sotos, has filed a complaint against Computershare Trust Company, N.A.,

Computershare Inc., Computershare Investor Services, LLC, and Hanesbrands Inc., for

damages resulting from the alleged wrongful escheatment of shares of Hanesbrands

stock.  Plaintiff alleges claims of negligence, violation of the Connecticut Unfair Trade

Practice Act ("CUTPA"), violation the Massachusetts General Laws Chapter 93A,

breach of contract and the covenant of good faith and fair dealing, and conversion.

Defendants filed a motion to dismiss, arguing that it did not owe a duty to plaintiff to

invest the escrow funds as asserted.

**FACTUAL BACKGROUND**

For purposes of this ruling, the Court assumes that the facts alleged in the

complaint are true.

1

Plaintiff is the trustee of a trust owning shares of Sara Lee Corporation for each of her three children, Christina, Cynthia and Peter.

On August 11, 2006, plaintiff received correspondence from defendants about the spin-off of Hanesbrands from Sara Lee.  The spin-off shares were to be held in book entry form in the Direct Registration System ("DRS") by Computershare. Defendants had a written record of Mrs. Sotos's address, which had been the same address since before the date that the Hanesbrands shares were issued.  No dividends were paid on these shares until 2013.

A Comptershare statement from September 2006 stated: "This advice is your record of the share transaction affecting your account on the books of the Company.... No action on your part is required, unless you wish to deposit your existing certificates, sell or request a certificate, or transfer your book-entry shares."  Computershare also issued a brochure for shareholders that outlined the DRS and its duties.  It represented that the DRS "[e]liminates your risk of loss, theft or destruction of certificates...."

A letter from Hanesbrands informed plaintiff that paper stock certificates for Hanesbrands shares would not be issued, even if requested, but that plaintiff would retain full ownership of the shares; and that the trusts would have all the traditional rights and privileges as holders of shares held in certificate form.  The letter did not inform plaintiff that her shares could escheat to the state; instead, it indicated that plaintiff did "not need to do anything to retain [her] ownership of either Hanesbrands or Sara Lee shares."

In April 2010, Mrs. Sotos received by mail a "Due Diligence" form from defendants regarding Cynthia's Trust" account.  On April 7, 2010, Mr. Sotos called and

2

spoke with Computershare, and Mrs. Sotos signed and returned the Due Diligence form, indicating that she had not changed her address.

In August 2011, defendant Computershare delivered to the state of Connecticut as abandoned property the Hanesbrands shares from the trust accounts held for Christina and Peter.

Computershare had not performed a due diligence search for Mrs. Sotos prior to declaring the shares to be abandoned.  To her knowledge, plaintiff did not receive any Due Diligence forms for Christina's and Peter's trust accounts.

By letter dated June 18, 2014, from Computershare to Mrs. Sotos's counsel, Computershare represented that escheatment of shares is required under state law, if (1) the mailing address is classified as "undeliverable" (the result of two or more mailings being returned to Computershare by the US Postal Service); (2) shares subject to a mandatory exchange due to corporate reorganization remained outstanding for a period of time exceeding the state dormancy period; or (3) the account maintains unclaimed checks that were issued prior to the beginning of the state dormancy period. None of these conditions had occurred prior to the Computershare's transfer of the shares to the state.

After the transfer, defendants did not send any correspondence, account activity statement, or try to call Mrs. Sotos.  She did not find out that the shares had escheated to the state until 2013, when she questioned why she had not received a dividend for Christina's and Peter's trusts.

On June 10, 2015, plaintiff commenced this action seeking the difference between value of the escheated shares at the time they were sold by the state and the

current value of the shares, including the benefit of a 4-for-1 stock split.  Plaintiff also seeks punitive damages.

## DISCUSSION

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."  Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984).  When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader.  Hishon v. King, 467 U.S. 69, 73 (1984).  The complaint must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  A plaintiff is obliged to amplify a claim with some factual allegations to allow the court to draw the reasonable inference that the defendant is liable for the alleged conduct.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Documents outside of the Complaint

In their motion, defendants seek the Court's consideration of the contents of the Stock Transfer Agency Agreement ("STA Agreement") between Hanesbrands and Computershare and Due Diligence notices dated March 23, 2011 for Christina's and Peter's trusts, respectively.  On a motion to dismiss, the Court may consider a document outside of the record that is incorporated by reference into the complaint or that is relied upon so heavily that it is integral to the complaint.  Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).  A document is integral to a complaint when "the incorporated material is a contract or other legal document containing

obligations upon which the plaintiff's complaint stands or falls." Global Network

Commc'ns, Inc. v. City of New York, 458 F.3d 150, 156 (2d Cir. 2006).  In this instance,

the Court will not consider these documents in ruling on this motion.  The STA

Agreement is not integral to the allegations of the complaint and plaintiff asserts that

she never had it in her possession. The Due Diligence notices cannot be considered

integral as plaintiff alleges that she never received them.  The Court must assume the

facts alleged in the complaint are true.

Time Bar

Defendants maintain that the negligence, conversion and CUTPA claims are

time barred.  Defendants assert that the negligence claim is barred by the statute of

limitations, Connecticut General Statutes § 52-584, which provides:  No action to

recover damages for injury to the person or to real or personal property caused by

negligence, or by reckless or wanton misconduct ... shall be brought but within two

years from the day when the injury is first sustained or discovered or in the exercise of

reasonable care should have been discovered, and except that no such action may be

brought more than three years from the date of the act or omission complained ...."

However, Connecticut courts have held that Section 52-584 does not apply to actions

for economic loss such as the instant case.  J.E. Robert Co. v. Signature Properties,

LLC, 2010 WL 1225329, *4 (Conn. Sup. Ct. 2010).

Section 52-577 provides that no action "founded upon a tort shall be brought but

within three years from the date of the act or omission complained of."  Plaintiff does

not dispute that the action was commenced later than three years after the allegedly

negligent share transfer.  However, plaintiff maintains that the doctrines of equitable

tolling and the continuing course of conduct apply because she did not discover that the shares had been transferred until she was sent the dividend on the shares held in Cynthia's trust.

State and federal precedent have interpreted Section 52-577 as a statute of repose that is not subject to the doctrine of equitable tolling.  Caro v. Fidelity Brokerage Svcs., 2015 WL 1975463, *29 (D. Conn. April 30, 2015) (citing cases).  However, construing the inferences of fact most favorably to plaintiff, the Court finds that defendants' continuing course of conduct renders this action timely.  The continuing course of conduct tolls the statute of limitations where the breach of duty remains in existence after the commission of the original breach.  Haas v. Haas, 137 Conn. App. 424, 433 (2012).  Generally, a continuing duty may be found where there is a special relationship between the parties or where there is some later wrongful conduct related to the prior act.  Giulietti v. Giulietti, 65 Conn. App. 813, 833, cert. denied, 258 Conn. 946 (2001). "The continuing course of conduct doctrine reflects the policy that, during an ongoing relationship, lawsuits are premature because specific tortious acts or omissions may be difficult to identify and may yet be remedied."  Id. at 834.

The complaint alleges that defendants had represented that plaintiff would be informed of all transactions involving the shares, that plaintiff could not receive stock certificates for the shares, and that plaintiff, on behalf of the trusts, need to take no action to retain ownership of the shares.  According to the complaint, defendants retained information to conduct adequate diligence to ascertain whether the shares were, in fact, abandoned but failed to do so.

According to the complaint, defendants had placed control over the shares with

the Computershare DRS, and plaintiff accepted defendants' representations that no action need be taken to retain the shares.  Construing the facts most favorably to plaintiff, the Court finds that defendants had a special relationship with plaintiff to safeguard plaintiff's interests with respect to the shares. Fiduciary responsibilities are implied when one party to a relationship is unable to fully protect its interests and the unprotected party has placed its trust and confidence in the other.  Hi-Ho Tower, Inc. v. Com-Tronics, Inc., 255 Conn. 20, 41 (2000). Safeguarding plaintiff's interest implicates the duty to conduct adequate due diligence prior to presuming abandonment, providing notice of intent to transfer, notice of transfer, notice of sale of the shares, and notice of the statutory right to return of property after the escheatment.  Due to the defendants' alleged continuing failure to safeguard plaintiff's interests as they had represented, defendants hindered plaintiff's ability to recognize that the shares had been presumed abandoned and escheated to the state.  Accordingly, the Court finds that plaintiff has set forth a plausible claim that defendants had continuing duty that tolls Section 52-577.[1]

Additionally, the Court finds that the continuing course of conduct also tolls the three-year statute of limitations applicable to the CUTPA claim.  See Fichera v. Mine Hill Corp., 207 Conn. 204, 208 (1988) (considering continuing course of conduct doctrine to CUTPA limitation).

Negligence

Plaintiff alleges that defendants were negligent by failing to exercise due care

---

[1]Section 52-577 is applicable to both the negligence and conversion claims.

and diligence prior to transferring the shares to the state as abandoned property; by failing to disclose the necessary information; and by failing to disclose all transactions concerning the escheated shares.  Defendants maintain that they did not owe a duty of care to plaintiff, and that plaintiff cannot establish damages due to Connecticut's statute that governs abandoned property.

A plaintiff must establish a breach of duty owed by defendant to plaintiff and resulting actual harm to plaintiff.  Right v. Breen, 277 Conn. 364, 372 (2006).  "[T]he test for the existence of a legal duty of care entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case."  Gazo v. Stamford, 255 Conn. 245, 250, 765 A.2d 505 (2001).  In considering the public policy analysis, the Court should consider the normal expectations of the participants in the activity under review; the public policy of encouraging participation in the activity, while weighing the safety of the participants; the avoidance of increased litigation; and the decisions of other jurisdictions.  Ruiz v. Victory Properties, LLC, 315 Conn. 320, 328-329 (2015).

According to the allegations of the complaint, defendants placed and held the escheated shares in DRS accounts and made representations that plaintiff need not take any action to retain ownership over the shares.  Construing these allegations most favorably to plaintiff, the Court finds that defendant should have known that plaintiff would suffer harm if the shares were transferred to the state without prior proper due

diligence; and that public policy considerations favor imposition of a duty on defendants to safeguard against improper escheat to the state.

Defendants' Breach of Duty

Defendants maintain that no breach of duty occurred because they complied with the state statutory abandoned property laws prior to transferring the shares to the state.

The term "escheat" describes property to which no other person or entity has any legal claim.  A. Gallo and Co. v. Commissioner of Environmental Protection, 309 Conn. 810, 831 (2013).  Pursuant to Connecticut General Statutes § 3-59b, an ownership interest in a business association may be presumed to be abandoned when the owner for a period of "more than three years neither claimed a dividend or other sum," nor corresponded in writing with the association, or otherwise indicated an interest in the ownership interest as "evidenced by a memorandum or other record on file with the association...."  Within one year prior to a presumption of abandonment, the holder of the property must "notify the owner thereof, by first class mail directed to the owner's last-known address, that evidence of interest must be indicated as required by this part or such property will be transferred to the Treasurer and will be subject to escheat to the state."  Conn. Gen. Stat. § 3-65a.  Section 3-65a(b) provides further: "Within ninety days after the close of the calendar year in which property is presumed abandoned, the holder shall pay or deliver such property to the Treasurer and file, on forms which the Treasurer shall provide, a report of unclaimed property."

Plaintiff has alleged that defendants failed to send a due diligence notice prior to transferring the shares to the state, that plaintiff had corresponded in writing with

defendants in April 2010, and that no dividends that could be claimed were paid until 2013.  Accordingly, the Court finds that plaintiff has alleged a plausible claim that defendants did not comply with the statutory requirements for finding a presumption of abandoned property.  Defendants maintain that plaintiff's prior communication concerning Cynthia's trust account is not relevant to defendants' knowledge of the ownership of accounts held in trust for Christina and Peter.  However, the Court cannot make a factual determination about the reasonableness of defendants' failure to conduct research prior to transferring the shares to verify whether Mrs. Sotos was also the trustee or owner of other accounts, whether she had changed her address, and whether she could be reached by telephone or email.

Defendants argue further that plaintiffs cannot establish any entitlement to damages.  Defendants assert that plaintiffs are only entitled to recover the amount reflecting the value of the shares held in the Trusts at the time shares were sold, which amounts the plaintiff has already received.  Defendants rely upon Connecticut General Statutes § 3-68a(d), which provides: "A person making a claim under this part is entitled to receive either the securities delivered to the Treasurer by the holder, if they remain in the possession of the Treasurer, or the proceeds received from sale, but no person has any claim under this part against the state, the holder, any transfer agent, registrar or other person acting for or on behalf of a holder for any appreciation in the value of the property occurring after the delivery by the holder to the Treasurer."

Plaintiff points out that this action is not proceeding under the state escheatment statutes, which require the owner to file a certified claim to the Treasurer for return of the "abandoned property."  See Conn. Gen. Stat. § 3-70a.  Here, plaintiff makes a claim

for common law damages, including the value of the stock split, that would return the trusts to the same position that the trusts would have been in had the shares not been transferred to the state.

On this motion, the Court cannot determine whether the Connecticut legislature sought to preempt common law actions through its escheatment statutes.  The parties may present the Court with an analysis of the legislative intent on summary judgment. Plaintiff has stated a plausible claim for negligence.

CUTPA

Plaintiff alleges that Computershare acted deceptively in violation of CUTPA by making representations that plaintiff need not take action to retain the shares and failed to advise that certain action was actually required to prevent escheatment.  Plaintiff also alleges that defendants' lack of due diligence, failure to retain proper records and failure to comply with Connecticut abandoned property law constituted a violation of CUTPA.

CUTPA provides, in relevant part, that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Conn. Gen. Stat. § 42-110b(a).  The Connecticut Supreme Court has adopted the following factors known as the "cigarette rule" to determine whether a trade practice is unfair or deceptive:  "(1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statute, the common law, or otherwise ——  whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers, competitors, or other

11

businessmen."  A-G Foods, Inc. v. Pepperidge Farm, Inc., 216 Conn. 200, 215 (1990).

In order to prove that the practice is unfair, it is sufficient to meet only one of the criteria

or to demonstrate that the practice meets all three criteria to a lesser degree.  Hartford

Electric Supply Co. v. Allen-Bradley Co., 250 Conn. 334, 368 (1999).  A CUTPA claim

may not lie where the complained of practice is incidental to the actual trade or

business conducted.  Brandewiede v. Emery Worldwide, 890 F.Supp. 79, 81 (D.Conn.

1994).

     The Court finds that plaintiff has set forth a plausible CUTPA claim.  Proper

retention and transfer of stock shares represent important responsibilities of

Computershare as a transfer agent.  Further, the alleged failure to conduct due

diligence prior to transferring the shares to the state as abandoned property offends

public policy and causes substantial injury to shareholders.[2]  Additionally, a defendant's

failure to provide information that it had a duty to disclose may constitute an unfair or

deceptive practice and a violation of CUTPA.  Willow Springs Condo. Ass'n. Inc. v.

Seventh BRT Dev. Corp., 245 Conn. 1, 46 (1998).  The motion to dismiss will be denied

on this count.

     Mass. Chapter 93A

     Plaintiff has asserted a claim under Massachusetts Chapter 93A, which prohibits

"unfair or deceptive acts or practices in the conduct of any trade or commerce."

     An act or practice is deceptive if it has the "capacity or tendency" to deceive.

Abruzzi Foods Inc. v. Pasta & Cheese Inc., 986 F.2d 605, 605 (1st Cir. 1993).  A

---

[2]Connecticut General Statutes § 3-67a(d) requires the exercise of good faith.

deceptive act or practice is one that could be found "to have caused a person to act differently from the way he [or she] reasonably would have acted." Aspinall v. Philip Morris Co., 813 N.E.2d 476, 486 (Mass. 2004). "[C]hapter 93A is intended for egregious conduct." Amerifirst Bank v. TJX Cos., 564 F.3d 489, 497 (1st Cir. 2009). For the reasons previously stated relevant to the CUTPA claim, plaintiff has stated a plausible violation of Chapter 93A. Additionally, the Court finds that the facts alleged may be construed as egregious conduct. The motion to dismiss will be denied on this claim.

Breach of Contract/Covenant of Good Faith

Plaintiff alleges breach of contract and the covenant of good faith and fair dealing.

The elements of a breach of contract are the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages. Namoury v. Tibbetts, 2005 WL 81615, *3 (D. Conn. Jan. 11, 2005). A contract may be implied but depends on an agreement manifested by words, action or conduct. Coelho v. Posi Seal Intern., Inc., 208 Conn. 106, 111 (1988). The duty of good faith and fair dealing is implied in every contractual relationship, and a claim for breach thereof requires that the plaintiff demonstrate that the defendant engaged in bad faith that impeded the plaintiff's right to receive the contract benefits. Walters v. Generation Financial Mortgage, LLC, 2011 WL 2533704, *2 (D. Conn. June 27, 2011).

Here, plaintiff has alleged an implied agreement as manifested by the conduct of the parties. Defendants set up the accounts of the Hanesbrands shares and made representations to plaintiff regarding her rights and defendants' responsibilities. Taking

13

all of the allegations as true, plaintiff has alleged a plausible claim for breach of contract and breach of the covenant of good faith and fair dealing.

Conversion

Plaintiff maintains that defendants' exercise of ownership rights over plaintiff's shares gives rise to liability for conversion.  Defendants counter that they transferred but did not retain the shares and that they committed no wrongful act.

In order to establish a prima facie case of conversion, the plaintiff must set forth allegations that (1) the moneys and property at issue belonged to the plaintiff, (2) the defendants deprived the plaintiff of those moneys and property for an indefinite period of time, (3) the defendants' conduct was unauthorized and (4) the defendants' conduct harmed the plaintiff.  Miller v. Guimaraes, 78 Conn. App. 760, 778 (2003).

Here, plaintiff has alleged that defendants provided no notice prior to deeming the stock shares to be abandoned and thereby failed to satisfy the escheatment statute. Plaintiff has stated a plausible claim for unauthorized conduct that deprived plaintiff of the stock shares.  The Court will leave plaintiff to her proof.

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss [#40] is DENIED. The stay of discovery is VACATED.


DATED this 3rd day of February, 2016 at Bridgeport, Connecticut.


/sWarren W. Eginton
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE